**Daisy DORTON, Plaintiff-Appellant,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant-Appellee.**

**No. 85–1502.**

United States Court of Appeals, Sixth Circuit.

Submitted Jan. 7, 1986.

Decided Jan. 24, 1986.

---

Martin Hirschman, Hurwitz, Karp, Hirschman & Wallach, Dearborn Heights, Mich., plaintiff-appellant.

Ross I. MacKenzie, U.S. Atty., Detroit, Mich., for defendant-appellee.

Before LIVELY, Chief Judge, WELLFORD, Circuit Judge, and PORTER,* Senior District Judge.

PER CURIAM.

On May 23, 1983 Daisy Dorton filed an application for widow's disability benefits alleging that she became disabled on January 1, 1981 at age 51.[1] Dorton claimed she was disabled as a result of multiple and cumulative circulatory, respiratory and nervous system ailments. In particular, Dorton claimed to have angina which meets the Social Security listing of impairments at 20 C.F.R. Part 404, Subpart P, Appendix 1, § 4.04(A)(2). Dorton's application was denied initially on July 14, 1983, and upon

---

* Honorable David S. Porter, Senior Judge for the United States District Court for the Southern District of Ohio, sitting by designation.

1. Dorton previously filed an application for widow's benefits on June 2, 1981. That application was denied on September 13, 1982, and Dorton did not appeal. Dorton's current application does not contain any new evidence relating to the period prior to the denial of her application on September 13, 1982. Therefore, as the Administrative Law Judge found, the prior determination that she does not qualify for these benefits is *res judicata* for the period up to September 13, 1982.

reconsideration on August 11, 1983. Dorton then requested a *de novo* hearing before an Administrative Law Judge (ALJ).

On January 16, 1984, a hearing was held before ALJ Arthur Yim who issued a decision denying benefits on February 3, 1984. The ALJ found that Dorton established the existence of angina, premature ventricular contractions, and bronchitis. Nevertheless, he concluded that the medical evidence of record did not establish that the claimant's impairment was evidenced by specific clinical findings that were the same as those for any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The Appeals Council declined review on April 27, 1984, thereby rendering the ALJ's decision the final decision of the Secretary of Health and Human Services.

On review of the final decision of the Secretary, pursuant to 42 U.S.C. § 405(g), United States Magistrate Lynn V. Hooe, Jr. of the Eastern District of Michigan found there was substantial evidence to support the ALJ's decision, and recommended that defendant's motion for summary judgment be granted and plaintiff's claim dismissed. Claimant filed objections to the Magistrate's recommendation on March 4, 1985. These objections were considered by U.S. District Judge Robert E. DeMascio along with the administrative record and Magistrate's report. On May 29, Judge DeMascio accepted the Magistrate's report and rendered judgment for the defendant. Dorton appealed, claiming that there was not substantial evidence to support the finding that she was not disabled because the medical evidence she introduced was uncontradicted.

■ Section 402(e) of the Social Security Act provides disability benefits to a widow if (1) she is the widow of a wage earner who died fully insured, (2) she is between the ages of fifty and sixty, (3) she is disabled, and (4) her disability is expected to result in death or to last for a continuous period of not less than twelve months. It is uncontroverted that Dorton is the widow of a wage earner who died fully insured and that she is between the ages of fifty

and sixty. Therefore the sole issue is whether she is disabled. It is well established that a widow must satisfy a stricter standard of disability than a wage earner. *Wokojance v. Weinberger,* 513 F.2d 210, 212 (6th Cir.), *cert. denied,* 423 U.S. 856, 96 S.Ct. 106, 46 L.Ed.2d 82 (1975). *See also Price v. Heckler,* 767 F.2d 281 (6th Cir. 1985); *Reynolds v. Secretary of Health and Human Services,* 707 F.2d 927 (6th Cir.1983). A widow is not considered to be disabled unless "her physical or mental impairment or impairments are of a level of severity which under regulations prescribed by the Secretary is deemed to be sufficient to preclude an individual from engaging in any gainful activity." 42 U.S.C. § 423(d)(2)(B). Moreover, in determining disability of a widow we may not consider her education and work experience. Rather, the widow's inability to work must be based solely upon medical considerations. 20 C.F.R. § 404.1577 (1985).

■ Section 423(d)(2)(B) authorizes the Secretary to set standards of severity for alleged disabilities which will be deemed to preclude an individual from engaging in any gainful activity. Those regulations are contained in Appendix 1 to 20 C.F.R. Part 404, Subpart P. A widow must show her impairments through specific clinical findings. 20 C.F.R. § 404.1578(a)(1). An individual cannot qualify for widow's disability benefits unless specific clinical findings show that she suffers from one of these impairments or that she suffers from one or more unlisted impairments that singly or in combination are the medical equivalent of a listed impairment. *Id.; Price v. Heckler,* 767 F.2d 281 (6th Cir.1985).

In this case, claimant contends that she meets the impairment listed at section 4.04(D) of Appendix 1. Section 4.04 concerns ischemic heart disease with chest pain of cardiac origin. It must be documented by a treadmill exercise test demonstrating "[p]remature ventricular systoles which are multiform or bidirectional or are sequentially inscribed (3 or more)" at

an exercise level of 5 METS or less. § 4.04(F)(2).

■ Dorton submitted the results of a treadmill exercise report dated February 4, 1983 which was conducted by the Disability Determination Service of the State of Michigan. The test was discontinued because of "premature ventricular systoles which are multiform or bidirectional ventricular tachycardin (three or more sequentially inscribed PVCs)." There was also a handwritten comment at the bottom of the report stating that, "Multiple P.V.C.s were noted." Although this apparently meets the requirements as set out above, upon close inspection of the test results it is evident that the premature ventricular systoles did not occur at the exercise level of 5 METS as required, but rather at 6 METS. Another treadmill test was conducted in March 1984. Although the report indicated there was "more marked ST segment depression and significant ST segment straightening suggestive of ischemia" at the time of chest pain, "no definite ischemic ST segment changes were seen" during the treadmill test. Thus, although Dorton does indeed present substantial evidence that she has ischemic heart disease with chest pain of cardiac origin, the ALJ was correct that Dorton did not demonstrate with specific clinical findings that she met the requirements of section 4.04(D) or any other section of Appendix 1.

A widow will also be considered disabled if she suffers from one or more unlisted impairments that singly or in combination are the medical equivalent of a listed impairment. An impairment or combination of impairments will be deemed medically equivalent to a listed impairment if the symptoms, signs and laboratory findings as shown in medical evidence are at least equal in severity and duration to the listed impairments most like the claimed impairment. 20 C.F.R. § 404.1526. Such a decision must be based solely on medical evidence supported by acceptable clinical and diagnostic techniques. 20 C.F.R. § 404.1526(b) (1985). The ALJ found that when Dorton's medical evidence was viewed as a whole, her impairments "even in combination" were not medically equivalent to any impairments listed in Appendix 1. If this determination is supported by substantial evidence, it must be considered conclusive. *See,* 42 U.S.C. § 405(g). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a particular conclusion. *Beavers v. Secretary of Health, Education and Welfare,* 577 F.2d 383, 388 (6th Cir. 1978).

■ Dorton asserts that there is not substantial evidence to support the Secretary's finding. She contends that in addition to her angina she has chronic obstructive pulmonary disease, chronic nervous tension, migraine headaches, diabetes, asthma, labyrinthine vertigo, and tinnitus, which, when taken together, are medically equivalent to a listed impairment, and renders her unable to engage in any gainful activity. Dorton's treating physician reports that she has these maladies, concluding that she has "multiple and cumulative factors of disability." Joint Appendix at 127. From the medical evidence produced, however, it is difficult to determine how many of these ailments have developed since the 1982 denial of disability which is *res judicata.*[2] Moreover, for many of the impairments

---

**2.** Nonetheless, there are indications of her declining health since 1982. In the 1982 ALJ decision, he noted that the medical evidence included a 1981 holter monitor test showing no significant ST changes and a treadmill exercise test which was discontinued due to fatigue. Joint Appendix at 42. Evidence submitted in connection with the current application includes a treadmill test and a holter monitor recording which reveal multiple PVCs. The cur-

rent application also includes evidence of "significant ST segment straightening suggestive of ischemia." *Id.* at 127. Moreover, in 1982 there was no finding that Dorton had angina and premature ventricular contractions as there is in the present case. Thus, even if some of the same general types of ailments were claimed in 1982, there is additional and different medical evidence substantiating them in the current application.

asserted there is no clinical support or the medical evidence fails to demonstrate the requisite severity.

There is substantial testimony and non-medical evidence to the effect that Dorton's combination of medical impairments prevent her from performing any gainful activity. In determining whether she is disabled, however, we may not consider her complete lack of any work experience nor her second grade educational level which left her functionally illiterate. Nor may we rely upon the evidence in the record which indicates that her physical impairments when taken together are sufficiently severe to prevent her from engaging in any gainful activity.[3]

Even in a close case in which the myriad medical problems of the claimant are as evident as they are in Dorton's case, the ALJ's findings of fact should not be disturbed unless we are persuaded that his findings are legally insufficient. Admittedly Dorton's medical evidence *almost* establishes a disability under section 4.04(D) of Appendix 1. Nonetheless, even when her additional ailments are added to the equation, we find that she has not presented adequate medical evidence of disability to demonstrate that her combined impairments are equivalent to any listed impairment so as to qualify Dorton as disabled under the stricter standards for widows. For these reasons, we must therefore affirm the district court's denial of Social Security widow's disability benefits to appellant.

---

**3.** Dorton lives with her son and is unable to do even minimal tasks for herself such as housework or washing and combing her own hair. Joint Appendix at 23, 29, 36–37. Although she does some cooking and washes dishes, she cannot carry laundry or walk upstairs in her own home without stopping to rest repeatedly. *Id.* at 24. Dorton also reported that about three times each week she has attacks that include accelerated and skipped heartbeats, smothering feelings, headaches, feverishness, spots in front of her eyes, dizziness and numbness in her mouth and hands. *Id.* at 21–23. Due to past bladder surgery she must urinate very frequently. When she exerts herself mildly she has chest pains for which she takes nitroglycerin. Thus,

Dorton presents a compelling case factually for finding disability. It is far different from that of another widow whose case we recently considered. In that case, *Price v. Heckler,* 767 F.2d 281 (6th Cir.1985), the claimant lived alone, managed her own affairs, and did her own housework. 767 F.2d at 283. Moreover, in Price's case there was evidence presented which suggested that some of her physical problems could be overcome. There is no similar evidence in Dorton's case. Despite all of this, however, we are constrained by the rigid requirements of the regulations to overlook this evidence because she is not a wage earner and is subject to the stricter widow's requirements.