**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 06a0082n.06**
**Filed: January 31, 2006**

**No. 04-4531**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| Karen Bledsoe, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| Jo Anne Barnhart, Commissioner of Social | ) | SOUTHERN DISTRICT OF OHIO. |
| Security, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

**Before: Martin, Nelson, and Rogers, Circuit Judges.**

**Rogers,** Circuit Judge. Ms. Bledsoe has a number of impairments, but she has not presented evidence that those impairments rise to the level necessary to be disabled. The administrative law judge's factual findings and denial of benefits are supported by substantial evidence and are procedurally proper. The court therefore affirms the district court's judgment upholding the decision of the administrative law judge to deny social security disability insurance benefits.

**I.**

Bledsoe was born on April 20, 1958. She has a ninth grade education. Bledsoe has had various skilled and unskilled jobs as a cashier, small parts assembler, and mental health aide. She testified that she stopped working in 2000 because of asthma, pulmonary disease, tarsal and carpel

tunnel syndrome, anxiety and depression. Bledsoe's obesity is an overarching factor in her disability claim. She is 5'4" and weighed 241 pounds when she filed for disability insurance. Her ideal body weight is 125 pounds. In various medical reports she is referred to as "extremely obese" and "morbidly obese."

Bledsoe's claim for disability rests on the argument that the combination of her impairments qualify her as disabled; she does not claim that she has one particular impairment that makes her disabled. Bledsoe's impairments include: asthma exacerbated by pneumonia, depressive neurosis, obesity, hypertension, respiratory condition (wheezing and shortness of breath), headaches, post-surgical carpel tunnel syndrome, a lesion on her right thorax, generalized anxiety and depressive disorders, panic attacks, foot pain, tarsal tunnel syndrome, mild nerve entrapment at the right ankle diagnosed in 1996, and lasting effects from a 1996 auto accident in which she suffered a lacerated spleen and renal contusion.

Bledsoe's myriad of impairments do not stop her from engaging in normal activities. She drives, cooks, reads, makes her bed, washes dishes, does laundry, attends church, watches television, goes grocery shopping weekly, and cares for her grandchildren. She was articulate during her testimony before the Administrative Law Judge ("ALJ").

*Procedural History:*

Bledsoe's initial application of September 1, 2000 was denied initially and on reconsideration. The Commissioner determined that Bledsoe was not disabled within the meaning

of the Social Security Act, 42 U.S.C. §§ 416(i), 423(d). Bledsoe sought de novo review before an ALJ. Bledsoe testified before the ALJ and presented expert testimony. On February 14, 2003, the ALJ denied Bledsoe's application. Bledsoe then sought review from the Appeals Council and review was denied. On July 16, 2003, Bledsoe appealed the agency decision to the district court, and the district court affirmed. Bledsoe filed a timely notice of appeal to this court on October 7, 2004.

## II.

This court reviews whether the ALJ's findings are supported by substantial evidence and whether the ALJ employed proper legal standards in reaching his conclusion. *Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

## III.

None of Bledsoe's arguments have merit. Most of Bledsoe's argument is procedural. To the extent Bledsoe argues that the ALJ's findings are not supported by substantial evidence, the testimony of Dr. Long, Dr. Hughes and Bledsoe's own testimony of her daily activities are substantial evidence to support the ALJ's finding that Bledsoe is not disabled.

Bledsoe's argument throughout her brief is that the proper procedure for weighing and considering evidence was not followed. Thus, even if the outcome is supported by substantial evidence the defects in the procedure warrant remand. Because the ALJ did follow proper procedures in coming to his decision, the court affirms the ALJ's decision to deny benefits.

Eligibility for disability benefits is determined by a five step process as outlined in 20 C.F.R. § 404.1520. A disability claimant must successfully navigate all five steps.

*Steps One and Two: Claimant has a severe impairment and is not working*

The ALJ's findings on steps one and two are favorable to Bledsoe. Bledsoe passed step one because she was not working when she applied for social security. Bledsoe passed step two because she has a severe impairment. Bledsoe's severe impairments include asthma, emphysema, and tarsal tunnel syndrome (entrapment of the tibial nerve, which follows the back of the leg to the ankle).

*Step Three: Claimant's impairment is not a listed impairment*

The ALJ did not err procedurally in determining that Bledsoe was not disabled under step three. Step three requires the ALJ to consider whether Bledsoe's impairments equal the level of severity of an impairment described in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (a "listed impairment"). If one has a "listed impairment" that meets duration requirements there is an irrebuttable presumption of disability. *Lankford v. Sullivan*, 942 F.2d 301, 309 (6th Cir. 1991); 20 C.F.R. § 404.1520(a)(iii).

Bledsoe does not argue that she has one particular impairment that falls into the class of "listed impairments." Rather, Bledsoe argues that the ALJ should have, but did not, consider whether all of her various impairments viewed together equaled a "listed impairment." This argument is without merit because the ALJ explicitly stated in his factual findings that he considered the combination of all impairments.

The ALJ did not procedurally err because he did look at the combination of all Bledsoe's impairments to determine if Bledsoe was disabled. The ALJ made a finding that "the medical evidence establishes that the claimant has 'severe' impairments . . . , but that she does not have an impairment or *combination of impairments* listed in, or medically equal to the one listed in Appendix 1, Subpart P, Regulations No. 4." JA 23 (emphasis added). The ALJ also made specific factual findings about the credibility of witnesses and expert reports. These findings show the ALJ did consider whether a combination of all Bledsoe's impairments was medically equal a "listed impairment," and is supported by substantial evidence. *See* 20 C.F.R. § 404.1526. Thus, the ALJ properly applied 20 C.F.R. § 404.1526.

The ALJ did not err by not spelling out every consideration that went into the step three determination. The language of 20 C.F.R. § 404.1526 does not state that the ALJ must articulate, at length, the analysis of the medical equivalency issue. It states that the ALJ should review all evidence of impairments to see if the sum of impairments is medically equivalent to a "listed impairment." This is exactly what the ALJ did. The ALJ described evidence pertaining to all impairments, both severe and non-severe, for five pages earlier in his opinion and made factual

findings. The ALJ explicitly stated that he considered the combination of all impairments even though he did not spell out every fact a second time under the step three analysis.

Bledsoe's argument that the ALJ should spell out the weight he gave to each factor in his step three analysis is not supported by case law. Requiring a heightened articulation standard would be inconsistent with this court's rulings. In a case that turned on step three analysis, where the disability claimant had multiple medical problems, this court noted, "the ALJ's findings of fact should not be disturbed unless we are persuaded that his findings are legally insufficient." *Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1986). *Dorton* supports the proposition that there is no heightened articulation standard where the ALJ's findings are supported by substantial evidence. *Id.* In the instant case the ALJ's factual findings are supported by substantial evidence. The plain language of the ALJ's opinion states that he considered all impairments. The ALJ thus considered all evidence as required by the regulation.

More specifically, the ALJ did not confine his analysis to severe impairments. Bledsoe argues that the ALJ looked only at asthma, emphysema, tarsal tunnel syndrome, anxiety and depression when determining that Bledsoe did not have a "listed impairment." Bledsoe notes that the ALJ should have considered the totality of impairments to see whether the combination of all impairments rose the level of a severe impairment. *See* 20 C.F.R. § 404.1523. The totality of impairments includes impairments that are not "severe impairments" under step two. The mere failure to discuss every single impairment under the step three analysis is not a procedural error. The ALJ did discuss Bledsoe's non-severe medical conditions. *See* JA 15 (discussion of 1986 auto

accident), JA 15 (headaches), JA 15 (post-surgical carpal tunnel syndrome), JA 16 (lesion on right

thorax), JA16-18 (anxiety and depressive disorders), JA 17 (foot pain), JA 18 (hypertension), JA 18

(obesity). The record reflects that the ALJ considered many non-severe impairments. Thus, the ALJ

did not err by not considering non-severe impairments.

Bledsoe makes one final, unavailing, procedural argument—that the ALJ improperly

analyzed her obesity. Bledsoe contends that the ALJ committed a procedural error by failing to

follow the procedure outlined in Social Security Ruling 02-01p. Social Security Ruling 02-01p does

not mandate a particular mode of analysis. It only states that obesity, in combination with other

impairments, "may" increase the severity of the other limitations. It is a mischaracterization to

suggest that Social Security Ruling 02-01p offers any particular procedural mode of analysis for

obese disability claimants. Thus, the ALJ did not err when considering Bledsoe's obesity as a factor

in whether she has a "listed impairment."

Thus, the ALJ did not err at step three.

*Step 4: Claimant can work at her old job*

The ALJ's finding that Bledsoe could perform her past work as an assembler is supported

by substantial evidence and is procedurally proper. At step four, the ALJ must assess whether

Bledsoe could work in any of her previous occupations. 20 C.F.R. § 404.1520(a)(4)(iv). At this

stage the ALJ must consider all impairments including impairments that are not severe. 20 C.F.R.

§ 404.154(a)(2). Bledsoe argues that the ALJ did not consider Bledsoe's obesity when he

determined that she could work as an assembler. This argument is unavailing because the ALJ did consider all impairments including obesity when making the determination that she could work as an assembler. Bledsoe also argues that the ALJ did not give proper weight to her treating physician's opinion. This argument is unavailing because the ALJ articulated adequate reasons for not giving controlling weight to Bledsoe's treating physician.

Bledsoe contends the opinion of Dr. Lin should be given controlling weight because Dr. Lin is a treating physician. The ALJ must give specific reasons for not affording such weight to Dr. Lin's opinion. 20 C.F.R. § 404.1527(d)(1). The ALJ reasoned that Dr. Lin's conclusions are "not well supported by the overall evidence of record and are inconsistent with other medical evidence of record." This is a specific reason for not affording controlling weight to Dr. Lin. Instead, the ALJ credited social security medical consultants Drs. Long and Hughes. The ALJ thus did not violate any procedural right to an adequate explanation of why the ALJ did not credit her treating physician's opinion.

The ALJ did consider Bledsoe's obesity. First, the ALJ made explicit mention of Bledsoe's obesity in his finding of facts. Second, the ALJ does not need to make specific mention of obesity if he credits an expert's report that considers obesity. *See, e.g., Skarbeck v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (stating "although the ALJ did not explicitly consider [claimant's] obesity, it was factored indirectly into the ALJ's decision as a part of the doctors' opinions."). Drs. Long and Hughes considered Bledsoe's obesity. JA 270 (note, in the caption, "alleged impairment: obesity"). Thus, the ALJ's opinion shows that he considered Bledsoe's obesity.

Because substantial evidence on the record as a whole supports the ALJ's finding that

Bledsoe can work as a small parts assembler, she is not disabled. Thus, the ALJ properly denied

benefits at step four.

**IV.**

The district court judgment upholding the commissioner's denial of disability benefits is

AFFIRMED.